UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:23-CV-24299-MORENO/TORRES

MARIA ELENA CHAVEZ LETONA,

    Plaintiff,

vs.

AMOR DE JESUS, CORP.,
SWEET LIVING FACILITY INC.,
JOSE MACHADO,
ZELMIRA QUINONEZ, and
AMINTA QUINONEZ,

    Defendants.
_____/

## PLAINTIFF'S MOTION FOR SANCTIONS
## BASED ON THE DEFENDANTS' SPOLIATION OF EVIDENCE

### I. INTRODUCTION

Plaintiff, Maria Elena Chavez Letona ("Ms. Chavez"), through her undersigned counsel and pursuant to Fed. R. Civ. P. 37, Local Rule 7.1, and other applicable Rules and laws, requests the Court to impose spoliation sanctions against Defendants Amor De Jesus Corp., Sweet Living Facility Inc., Jose Machado, Zelmira Quinonez, and Aminta Quinonez, based on the intentional destruction of records Florida law required them to maintain. The records that Defendants were required to make and keep included daily medication observation logs. Defendants destroyed those records, notwithstanding the requirement to keep them, hindering not only Ms. Chavez's ability to prove her claims but also the quality of care given to those who are, arguably, society's most vulnerable. Considering the recordkeeping requirements, the impact on this case, and the Defendants' bad faith, the Court appropriately sanctions the Defendants.

## II. FACTUAL AND PROCEDURAL HISTORY

1. Defendant Amor De Jesus, Corp. ("ADJ") is owned by Defendant Jose M. Machado, who leases the property from which ADJ operates. *See* ADJ's 2021 and 2023 AHCA Applications for Renewal Licensure, attached as "Exhibit A" and "Exhibit B", respectively.

2. Mr. Machado identified himself as the sole owner of ADJ. *Id.*

3. Mr. Machado indicated that he was the Financial Officer for the company, while his wife, Aminta Quinonez, was the Administrator and Managing Employee of ADJ. *Id.*

4. Defendant ADJ held a license to operate as an Assisted Living Facility and as a Limited Mental Health facility from the State of Florida. *See* ADJ's 2021-2023 License, attached hereto as "Exhibit C".

5. Defendant Sweet Living Facility Inc. ("SLF") is owned by Defendant Zelmira Quinonez, although her daughter Aminta Quinonez served as the company's financial officer, safety liaison, and licensing contact person during Ms. Chavez's employment. *See* SLF's AHCA Licensing Application, attached as "Exhibit D"; *see also* SLF's AHCA 2020 and 2022 AHCA Applications for Renewal Licensure, attached as "Exhibit E" and "Exhibit F", respectively.

6. Defendant SLF held a license to operate as an Assisted Living Facility and as a Limited Mental Health facility from the State of Florida. *See* ADJ's 2020-2022 License, attached hereto as "Exhibit G".

7. Throughout Ms. Chavez's employment, Defendants required her to distribute medication to the residents of the two ALFs, observe them taking medication, and sign a medication logbook indicating the date and time each medication was taken. *See* Ms. Chavez's Sworn Declaration, attached as "Exhibit H".

8. More specifically, Ms. Chavez explained that the Defendants kept the medications for their residents in a locked cabinet at each facility, that she would review the medication logbooks to determine who needed medication, when, and in what dosages/quantities, and she would then identify the dates/days and times she provided the residents with their medications before signing the medication logbooks. Exhibit "H".

9. The medication logbooks would have assisted Ms. Chaves in being able to not only prove that Defendants employed her, but also in more accurately calculating the wages owed to her. *Id.*, at ¶¶18-24.

10. In response to Ms. Chavez's written requests for Defendants to produce all logs and documents Ms. Chavez signed/completed during her employment and all documents reflecting her job performance, Defendants responded "none" – despite ADJ and SLF's duties to maintain various records as assisted living facilities ("ALFs") operating within the State of Florida, including daily medication logs for their residents. *See* ECF Nos. 43-44.

11. Defendants' failure to produce the medication logs signed by Ms. Chavez resulted in Ms. Chavez's request for a discovery hearing before Magistrate Judge Torres. *Id.*

12. On April 16, 2024, the undersigned began to conduct the deposition of Defendant Aminta Quinonez, individually and as the corporate representative of ADJ. She admitted that the medication logs Ms. Chavez completed during her employment at one point in time existed but that Defendants destroyed them by throwing them out, notwithstanding the legal requirements to retain them.

13. Aminta Quinonez further admitted to having thrown away the medication logbooks in which Ms. Chavez documented before and after the filing and service of this lawsuit.

14. The Defendants' destruction of the medication logbooks adversely affected Ms. Chavez's ability to prove her claims through documentary evidence and more accurately calculate the wages owed to her. (Exhibit "H" at ¶¶23-24.)

15. Defendant Aminta Quinonez's deposition was suspended prematurely due to her/her counsel's purported time constraints. *See* ECF No. 68, ¶2.

16. Due to Defendant Aminta Quinonez's lack of cooperation in scheduling her continued deposition, Ms. Chavez was forced to request an extension of the discovery deadline in this case, as well as a second discovery hearing before Magistrate Judge Torres. *See* ECF No. 68.

17. To date, Defendants have not provided a single document reflecting the hours Ms. Chavez worked during her employment, nor have they allowed her to complete the deposition of Defendant Aminta Quinonez.

### III. THE LAW

**A.** **Florida Law Requires Assisted Living Facilities To Make And Maintain Certain Records.**

The "Assisted Living Facilities Act" imposes certain recordkeeping requirements on ALFs in recognition of the protection of some of the most vulnerable people in our society. Fla. Stat. §429.01. Granting a license to an ALF "is a public trust and a privilege and is not an entitlement should guide the finder of fact or trier of law at any administrative proceeding or in a court action…" Fla. Stat. §429.01(3). The Florida legislature contemplated that the Florida Department of Health would implement further rules applicable to ALFs, and those are contained in Section 59A-36 of the FAC. Fla. Stat. §429.41. This section requires, as applicable herein, ALFs to make and maintain certain records and documents relating to their staff, staffing, shifts, hours worked, and daily medication logs for their residents.

The FAC requires ALFS to document the medications provided to their residents at FAC §59A-36.008, as follows:

(5) MEDICATION RECORDS.

(a) For residents who use a pill organizer managed in subsection (2), the facility must keep either the original labeled medication container; or a medication listing with the prescription number, the name and address of the issuing pharmacy, the health care provider's name, the resident's name, the date dispensed, the name and strength of the drug, and the directions for use.

(b) The facility must maintain a daily medication observation record for each resident who receives assistance with self-administration of medications or medication administration. A medication observation record must be immediately updated each time the medication is offered or administered and include:

1. The name of the resident and any known allergies the resident may have;

2. The name of the resident's health care provider and the health care provider's telephone number;

3. The name, strength, and directions for use of each medication; and,

4. A chart for recording each time the medication is taken, any missed dosages, refusals to take medication as prescribed, or medication errors.

With regard to staffing, FAC §59A-36.010 permits ALFs to hire independent contractors to provide services to their residents so long as the "contract between the facility and the staffing agency or contractor [] specifically describe[s] the services the staffing agency or contractor will provide to residents." FAC §59A-36.010(2)(d).

The FAC also identifies the minimum number of hours it must have staff work, which varies based on the number of residents. FAC §59A-36.010(3)(a). It requires ALFs to maintain certain records detailing the days, times, and hours worked by its employees, and to make those records available upon request:

> (c) The facility must maintain a written work schedule that reflects its 24-hour staffing pattern for a given time period. Upon request, the facility must make the daily work schedules of direct care staff available to residents or their representatives.

FAC §59A-36.010(3)(c).

ALFs are permitted to have personnel – licensed or unlicensed – assist a resident in taking medication. Fla. Stat. §429.256, subject to the rules contained in the FAC.

ALFs are further required to maintain the required records created for at least two years after the resident for at least two years after the resident leaves the facility and to ensure that the records are "readily available" for production upon request. FAC §59A-36.015(3)(q). The records are to be available upon request and maintained at the facility:

> The facility must maintain required records in a manner that makes such records readily available at the licensee's physical address for review by a legally authorized entity. If records are maintained in an electronic format, facility staff must be readily available to access the data and produce the requested information. For purposes of this section, "readily available" means the ability to immediately produce documents, records, or other such data, either in electronic or paper format, upon request.

FAC §59A-36.015.

One of the reasons that ALFs make, keep, maintain, and make available their records is to allow others to review those records at a later date. Fla. Stat. §429.294. The Florida legislature determined that anyone who "alters, defaces, or falsifies any medical or other record of an assisted living facility" commits a second-degree misdemeanor. Fla. Stat. §429.49.

As licensed ALFs, owners, and administrators responsible for the care of the elderly, informed, and vulnerable, Defendants cannot claim ignorance of the laws requiring they make and keep records.

**B.**     **The FLSA Requires Employers To Make And Maintain Records.**

Although Defendants deny that they had the requisite gross annual revenues under the

FLSA, the FLSA applies to Defendants based on their admitting to their facilities being primarily engaged in caring for the elderly. *See* ADJ and SLF's Resp. to Plt.'s RFA, ¶¶22-29, attached hereto as "Exhibit I" and "Exhibit J", respectively; *see also* 29 U.S.C. § 203(s)(1)(B). As an FLSA-covered employer and an assisted living facility operating in the State of Florida, Defendants possessed a duty under both the FLSA and State regulations to maintain the daily medication logs which they destroyed. As long held by the U.S. Supreme Court and codified by the FLSA, "it is the employer who has the duty under ... the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in the position to know and to produce the most probative facts concerning the nature and amount of work perform." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *see* 29 C.F.R. § 552.110(a). For a minimum of three years, every FLSA employer must maintain and preserve records of the "total hours worked each week by the employee for the employer[.]" 29 C.F.R. § 552.110(a). These records may be kept in any form so long as this information is properly recorded. *Id.*

Defendants, therefore, possessed a duty under the FLSA to maintain these records for a minimum of three years.

**C.      The Court Properly Sanctions Parties Who Destroys Evidence In Bad Faith.**

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 Fed. Appx. 298, 301 (11th Cir. 2009) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). The Court possesses "broad discretion" to impose sanctions for spoliation, which is derived "from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Flury v. Daimler Chrysler Corp.*, 427 F.3d

939, 944 (11th Cir. 2005). "[S]anctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." *Id.*

The Eleventh Circuit Court of Appeal summarized the law relating to the imposition of the sanction of an adverse inference in *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020), as follows:

> Spoliation is "defined as the destruction of evidence or the significant and meaningful alteration of a document or instrument." *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003) (quotation marks and citation omitted). In some circumstances, a party's "spoliation of critical evidence may warrant the imposition of sanctions." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005). Because spoliation is an evidentiary matter, "federal law governs the imposition of spoliation sanctions." *Id.* at 944. Sanctions for spoliation may include "(1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator." *Id.* at 945.
>
> When deciding whether to impose sanctions, a number of factors are relevant: "(1) whether the party seeking sanctions was prejudiced as a result of the destruction of evidence and whether any prejudice could be cured, (2) the practical importance of the evidence, (3) whether the spoliating party acted in bad faith, and (4) the potential for abuse if sanctions are not imposed." *ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1307 (11th Cir. 2018) (citing *Flury*, 427 F.3d at 945).
>
> Spoliation sanctions—and in particular adverse inferences—cannot be imposed for negligently losing or destroying evidence. Indeed, "an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith." *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997). And bad faith "in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). This consideration is key in evaluating bad faith because the party's reason for destroying evidence is what justifies sanctions (or a lack thereof).

Sanctions for the destruction of evidence must be "in bad faith" and not simply negligent. *Foulke v. Weller*, 2024 WL 2761778, at *12 (11th Cir. May 29, 2024). The Court can then determine the type of sanctions to impose based on the conduct at issue:

> Available sanctions include, but are not limited to, the following: default judgment, adverse inference or rebuttable presumption instructions to the jury, striking pleadings, and an

> award of fees and costs incurred by the injured party as a result of the spoliation. *Citing Flury*, 427 F.3d at 945. Factors to be considered when determining the seriousness of the sanctions to impose against a party for failure to preserve critical evidence in its custody vary according to (1) the willfulness or bad faith of the party responsible for the loss or destruction of the evidence; (2) the degree of prejudice sustained by the opposing party; and (3) what is required to cure the prejudice." *St. Cyr v. Flying J. Inc.*, 2007 WL 1716365, at *4 (M.D. Fla. June 12, 2007).

*Kelley v. TaxPrep1, Inc.*, 2015 WL 12839254, at *2 (M.D. Fla. July 27, 2015).

## IV. ARGUMENT

Ms. Chavez requests the Court to strike Defendants' pleadings as a sanction for destroying records Florida law required them to maintain, adversely impacting Ms. Chavez's ability to prove the days and times she worked, the duties she performed for Defendants, and the damages to which she is entitled to recover from them for failing to pay her the unpaid minimum and overtime wages required the FLSA and the minimum wages required by the FMWA. The Court has the discretion in sanctioning the Defendants to award sanctions ranging from striking their pleadings to imposing an adverse inference, and so if the Court is not inclined to strike the Defendants' pleadings, then it should at the very least impose an irrefutable presumption against the Defendants, and for the jury to deem certain facts admitted and established favoring Ms. Chavez, after considering Defendants' bad faith conduct in intentionally destroying the medication log books and the concomitant violations of the regulations applicable to Assisted Living Facilities, the impact on the vulnerable residents of their facilities, and the impact on Ms. Chavez's ability to present her claims.

### A. <u>The Court Properly Determines That Sanctions Are Appropriate.</u>

As owners, operators, and administrators of the two ALFs at issue in this case, the Defendants were obligated to make and maintain records relating to the dates and times that Ms. Chavez worked, including but not limited to the medication logs they destroyed. FAC §§59A-

36.008, 36.010, 36.015. The evidence in this case is that although Defendants made and/or kept the medication logs, they intentionally destroyed them in contravention of Florida and federal law. Based on the record evidence, Ms. Chavez carries her burden of showing:

> that evidence once existed 'that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case;' that the Defendant engaged in an affirmative act causing the evidence to be lost; that it did so while it knew or should have known of its duty to preserve the evidence; and that 'the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

*Schultze v. 2K Clevelander, LLC*, 17-CV-22684, 2018 WL 4859071, at *10 (S.D. Fla. Oct. 4, 2018) (sanctioning the defendant for its bad faith in destroying evidence).

### i. The Missing Evidence Was Crucial To Proving Ms. Chavez's Case.

Defendants did not document the days or times when Ms. Chavez worked, and they did not require Ms. Chavez to document the times she started and stopped work or the days she worked. Although exact time records do not exist for Ms. Chavez, Defendants required her to assist their residents with the self-administration of medication and then complete an observation log by documenting the date(s) and time(s) that each medication was administered. (Exhibit "H".) The entries Ms. Chavez made in these medication logs were the only documents identifying the dates and times Ms. Chavez worked for Defendants. From these records, Ms. Chavez could have better determined the dates she worked for Defendants, an approximation of the hours she worked each day/shift, and provided the jury with documentation confirming that her job duties included assisting residents with self-administering medication. *Id.* The medication logs, as the sole documentary evidence that would conclusively establish the dates when Ms. Chavez worked, and which would establish that she was at work at certain times – day and night – and part of her job duties, would have been the most critical evidence in this case.

### ii.  <u>Defendants Acted In Bad Faith By Destroying The Evidence.</u>

Defendants admit through the deposition testimony of their owner/administrator, Aminta Quinonez, that the medication logs existed at one time, and that Defendants took affirmative steps to destroy these documents. Their conduct in destroying perhaps the only evidence of the dates and times worked by Ms. Chavez constitutes bad faith given that: (i) the medication logs were material to Ms. Chavez's ability to prove her damages under the FLSA and to Defendants' ability to substantiate their defense that Ms. Chavez did not work as often as she claims; (ii) Defendants conceded to having destroyed the medication logs; (iii) Defendants knew and admit that they were under a duty to preserve these documents under the FAC; and (iv) there is no credible explanation for Defendants' destruction of their residents' daily medication records, and they have proffered no reason for the same.

In *Austrum v. Fed. Cleaning Contractors, Inc.*, 149 F. Supp. 3d 1343 (S.D. Fla. 2016), the Court analyzed the type of bad faith necessary to support the imposition of an adverse inference based on the spoliation of evidence. The Court in *Austrum* recognized that employers covered by Title VII of the Civil Rights Act of 1964 were required to preserve employment applications for designated periods of time under 29 C.F.R. §1602.14, that the defendant failed to comply by not preserving the plaintiff's employment application, and that the defendant's practice was to not preserve employment applications notwithstanding the requirements imposed by §1602.14. *Id.* The Court decided to impose sanctions against the defendant in by finding it acted "in bad faith" and granting the plaintiff's request for an adverse inference:

> Regarding the required "bad faith" factor, the Court finds that Federal acted in bad faith as that term is defined in *Flury*. Federal has no legitimate excuse for having a practice of discarding applications that it had a legal obligation to preserve under federal regulations. Federal's culpability rises above mere negligence. This is not a case where the application

> was accidentally destroyed while the employer otherwise complied with its legal obligations. Instead, the discarding of the applications was intentional. Whether intentionally or ignorantly, Federal completely disregarded the EEOC's recordkeeping regulation, which was promulgated specifically to ensure that personnel records such as employment applications are preserved for employment discrimination litigation. *See EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1195 (4th Cir.1981) ("The affirmative obligation imposed by s 1602.14(a) to preserve records was clearly designed to protect Title VII plaintiffs from an employer's destruction of possibly damaging evidence."). Federal may not have known of Austrum's claim when it discarded his application, but the regulation put Federal on notice of the application's importance to potential employment discrimination litigation and the need to preserve it.

*Austrum*, 149 F. Supp. 3d at 1351-52. The Court properly concludes that Defendants acted in bad faith in destroying the medication logs before and during this litigation.

**B.     The Relief Sought.**

Within the Eleventh Circuit, spoliation sanctions may include varying relief such as dismissal of the case, entry of default judgment, exclusion of expert testimony, or "a jury instruction on spoliation which raises a presumption against the spoliator." *U.S. EEOC v. GMRI, Inc.*, No. 15-cv-20561, 2017 U.S. Dist. LEXIS 181011, at *62-63 (S.D. Fla. Nov. 1, 2017) (quoting *Flury*, 427 F.3d at 945). In determining the appropriate level of sanctions to be imposed upon a spoliating party, "[t]he Court has broad discretion to impose sanctions derived from its inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Smith v. Sohaan Dev., Inc.*, No. 6:12-cv-1369, 2013 U.S. Dist. LEXIS 150849, at *5 (M.D. Fla. Oct. 1, 2013).

Within the Eleventh Circuit, courts "frequently enter orders in cases where parties seek sanctions, including default judgments or dismissals, for spoliation." *Collar v. Abalux, Inc.*, No. 16-cv-20872-Lenard/Goodman, 2018 U.S. Dist. LEXIS 112086, at *36-37 (S.D. Fla. Jul. 5, 2018) (citing *Atlantic Sea Co., S.A., v. Anais Worldwide Shipping, Inc.*, No. 08-23079-CIV, 2010 U.S. Dist. LEXIS 65262, 2010 WL 2346665 (S.D. Fla. June 9, 2010) (Brown, J.); *Managed Care Sols., Inc. v.*

*Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317 (S.D. Fla. 2010) (O'Sullivan, J.); *Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV, 2009 U.S. Dist. LEXIS 111659 (S.D. Fla. Nov. 16, 2009) (Rosenbaum, J.)). "The courts have the inherent power to enter a default judgment as punishment for a defendant's destruction of documents[.]" *Id.* As the most severe form of sanctions for spoliation, default judgment should be entered "when there is a showing of bad faith and lesser sanctions will not suffice." *Id.* at *7 (citing *Flury*, 427 F.3d at 944-45; *Aldrich v. Roche Biomedical Laboratories*, 737 So.2d 1124, 1125 (Fla. 5th DCA 1999).

As discussed above, Defendants acted in bad faith by destroying the only documents reflecting the dates and times worked by Ms. Chavez, knowing they needed to keep them. They possessed a duty as an ALF operating within the State of Florida to maintain these documents and produce them upon request for a minimum of five (5) years, in addition to their duty as an employer under the FLSA to preserve Ms. Chavez's time and pay records. Defendants have not – because they cannot – offer any legitimate explanation for destroying these documents despite their duties to Ms. Chavez and to the residents of their ALFs. This bad faith conduct has completely inhibited Ms. Chavez's ability to prove her case through documentary evidence and can only be redressed by the highest level of spoliation sanctions: striking Defendants' pleadings and entry of a default judgment in favor of Ms. Chavez.

In the alternative, Ms. Chavez requests that the Court impose sanctions in the form of an adverse inference jury instruction. This type of jury instruction ranges "in differing and ever-increasing levels of harshness." *Id.* at *63. This Court has defined the varying levels of adverse inferences as follows:

> One type results in a jury being instructed that certain facts are deemed admitted and must be accepted as true. Another type results in the imposition of a mandatory, albeit

> rebuttable, presumption. A third type permits a jury to presume that the lost evidence is relevant and favorable to the innocent party. With this third type of adverse inference, the jury also considers the spoliating party's rebuttal evidence and then decides whether to draw an adverse inference.

*GMRI, Inc.*, 2017 U.S. Dist. LEXIS 181011, at *63. Here, Ms. Chavez seeks the first type of adverse inference described above – by instructing the jury to shall accept as true facts that Defendants are Ms. Chavez's employers (under the FLSA and FMWA), that Ms. Chavez was a non-exempt employee, that Ms. Chavez worked 89-90 hours a week for the Defendants, and that Defendants only paid Ms. Chavez $400.00 per week for her work. *See* ECF No. 66.

The Court properly finds that Ms. Chavez is entitled to entry of a default final judgment against Defendants – or in the alternative, an adverse inference jury instruction as to the medication logs destroyed by Defendants – given that: (i) the logs existed at one time, as conceded by Defendants; (ii) Defendants possessed a statutory duty to maintain these documents; (iii) the medicine logs would have facilitated Ms. Chavez's ability to prove unpaid wages claims as, perhaps, the only documents evidencing the dates and times she worked; and (iv) Defendants acted in bad faith by destroying these logs before and during the litigation knowing they should have been kept.

WHEREFORE Plaintiff, Maria Elena Chavez Letona, requests that the Court enter an Order meting out the appropriate sanctions against Defendants, Defendants Amor De Jesus Corp., Sweet Living Facility Inc., Jose Machado, Zelmira Quinonez, and Aminta Quinonez, commensurate with their bad faith conduct in destroying the medication logs, the adverse effects the destruction of those logs has on Ms. Chavez's ability to prove her claims through documentary evidence, the requirements imposed on Defendants to make and maintain the log books, Defendants' knowledge of the requirements imposed on them to keep the log books, and Defendants' ill intentions in destroying the log books before and during this litigation.

Respectfully submitted this 9th day of August 2024.

s/ Patrick Brooks LaRou, Esq.
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
Patrick Brooks LaRou, Esq. (1039018)
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue, Suite 770
Coral Gables, Florida 33146
Telephone: (305) 230-4884
*Counsel for Plaintiff*
